Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000542
31-JUL-2017
02:19 PM

NO. CAAP-14-0000542

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


BANQUE DE TAHITI, a Tahiti corporation,
Judgment Creditor-Appellant,
v.
FILOLA TINA KURTH, Personal Representative of the
Estate of THOMAS CHRISTIAN KURTH, Deceased,
Judgment Debtor-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P. NO. 03-1-0045)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

This action arose from Judgment Creditor-Appellant
Banque de Tahiti's (**Banque de Tahiti**) filing of a French
Polynesian judgment in the Circuit Court of the Third Circuit
(**circuit court**),[1] seeking to enforce that foreign judgment
against Judgment Debtor-Appellee Thomas Christian Kurth (**Kurth**),
who is now deceased.[2] Banque de Tahiti appeals from the circuit
court's Judgment, entered on March 24, 2014, in favor of Kurth
and dismissing Banque de Tahiti's claims to enforce the foreign

---

[1] The Honorable Glenn S. Hara presided.

[2] On March 3, 2016, we granted Banque de Tahiti's "Motion to Substitute
Parties" to the extent it sought to substitute Filola Tina Kurth, Personal
Representative of the Estate of Thomas Christian Kurth, for Thomas Kurth.

judgment.

In appealing from the Judgment, Banque de Tahiti contends that the circuit court erred by entering: (1) the "Order Granting [Kurth's] Motion to Dismiss Pursuant to [Hawaii Revised Statutes (**HRS**)] § 657-5,"[3] (**Order Granting Motion to Dismiss**) entered December 23, 2013; and (2) an "Order Granting [Kurth's] Renewed Motion for Reconsideration of Findings of Fact; Conclusions of Law; Order Granting [Banque de Tahiti's] Motion for Summary Judgment Filed March 10, 2006 and Denying [Kurth's] Motion for Summary Judgment" (**Order Granting Reconsideration**), entered October 21, 2009, which vacated a previous summary judgment ruling in favor of Banque de Tahiti.

For the reasons stated below, we vacate in part, affirm in part, and remand for further proceedings.

## I. Background

This case has a fairly lengthy and involved procedural background. We summarize relevant parts of the record.

On September 19, 2003, Banque de Tahiti filed in the circuit court the French Polynesian judgment entered in favor of Banque de Tahiti and against Kurth (**Foreign Judgment**), asserting that it was being filed pursuant to HRS § 658C-4 (Supp.

---

[3] HRS § 657-5 (2016) provides:

> **§657-5 Domestic judgments and decrees.** Unless an extension is granted, every judgment and decree of any court of the State <u>shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered</u>. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended. No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and the filing of a non-hearing motion or a hearing motion to extend the life of the judgment or decree.

(Emphasis added.)

2008)(repealed 2009).[4]  HRS § 658C-4 was part of the now-repealed Uniform Foreign Money-Judgment Recognition Act (**UFMJRA**).  The Foreign Judgment was issued in the Civil Court of First Instance of Papeete, Island of Tahiti (**Tahiti court**) on June 23, 1999.  Tahiti is part of French Polynesia.  The Foreign Judgment apparently provides, *inter alia*, that Kurth was ordered to pay Banque de Tahiti 90,829,471 French Pacific francs, and also declared the execution against property on amounts held by Banque de Tahiti on behalf of Kurth regular and valid.

On December 8, 2003, Kurth filed in the circuit court a statement opposing enforcement of the Foreign Judgment under HRS § 658C-4.  In an attached declaration, Kurth declared, *inter alia*, that he received no notice that the underlying French Polynesian proceedings involved more than an *in rem* action for attachment to money on deposit with another bank, Banque Paribas, thus the Foreign Judgment was not a money judgment enforceable under HRS § 658C-4.  On January 26, 2004, Kurth filed affirmative defenses to enforcement of the Foreign Judgment and counterclaims.  As an affirmative defense, Kurth asserted, *inter alia*, that the procedures by which the Foreign Judgment was obtained were not compatible with due process, therefore enforcement should be denied pursuant to the UFMJRA, HRS Chapter 658C.[5]

---

[4]  HRS § 658C-4(a) provided:

> [**§658C-4] Recognition and enforcement.**  (a) Except as provided in section 658C-5, a foreign judgment meeting the requirements of section 658C-3 shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money.  A copy of any foreign judgment may be filed in the office of the clerk of an appropriate court of this State.  The foreign judgment shall be enforceable in the same manner as the judgment of a sister-state that is entitled to full faith and credit.

[5]  HRS Chapter 658C, the UFMJRA, was repealed effective April 30, 2009. 2009 Haw. Sess. Laws Act 34, § 2 at 64.  HRS Chapter 658C was replaced by HRS Chapter 658F, the Uniform Foreign-Country Money Judgments Recognition Act (**UFCMJRA**).  2009 Haw. Sess. Laws Act 34, § 1 at 62-64; HRS § 658F-1 (2016). Because this case was initiated before April 30, 2009, Chapter 658C is applicable.  2009 Haw. Sess. Laws Act 34, § 3 at 64.

Thereafter, the parties had a number of discovery disputes, and then both Kurth and Banque de Tahiti filed motions for summary judgment on February 16, 2006, and March 10, 2006, respectively. Kurth asserted in his motion that the Foreign Judgment was unenforceable under the UFMJRA, the Foreign Judgment had not been perfected under the law of French Polynesia due to inadequate service, and Kurth's obligation had been discharged. Banque de Tahiti opposed Kurth's motion for summary judgment and instead sought summary judgment in its favor, arguing that the Foreign Judgment was enforceable under the UFMJRA. Most of Banque de Tahiti's contentions were based on a declaration from Frederic Veniere (**Veniere**), who declared that he was an attorney in both France and French Polynesia, and that he had reviewed the files of the Tahiti court regarding the subject Foreign Judgment.

The circuit court subsequently entered an order granting Banque de Tahiti's motion for summary judgment and denying Kurth's motion for summary judgment (**7/20/06 Summary Judgment Order**). On July 31, 2006, Kurth filed a motion for reconsideration which the circuit court denied on November 14, 2006.

Subsequently, however, Banque de Tahiti and Kurth continued to file various motions and the circuit court eventually granted Kurth leave to file a renewed motion for reconsideration of the 7/20/06 Summary Judgment Order, which Kurth filed on December 12, 2008. In a supplemental memorandum in support of his renewed motion for reconsideration, Kurth asserted that Veniere was deposed on April 22, 2009, and based on Veniere's deposition, the Foreign Judgment was not enforceable pursuant to the UFMJRA.

On October 21, 2009, the circuit court issued the Order Granting Reconsideration, thereby vacating the 7/20/06 Summary Judgment Order. For four years thereafter, not much occurred in the case.

On October 29, 2013, Kurth filed a motion to dismiss pursuant to HRS § 657-5, arguing that ten years had elapsed since

the Foreign Judgment had been filed with the circuit court on September 19, 2003, that Banque de Tahiti had not renewed the judgment, and thus the Foreign Judgment is deemed discharged as a matter of law.  On December 23, 2013, the circuit court granted Kurth's motion to dismiss, issuing the Order Granting Motion to Dismiss.  On March 24, 2014, the circuit court entered the Judgment in favor of Kurth dismissing Banque de Tahiti's claim to enforce the Foreign Judgment (and also dismissing Kurth's counterclaims).

## II. Discussion

### A. Motion to Dismiss Pursuant to HRS § 657-5

In this appeal, Banque de Tahiti contends that the circuit court erred in granting Kurth's motion to dismiss pursuant to HRS § 657-5, which provides that a domestic judgment or decree is presumed paid and discharged after ten years from the date the judgment or decree was rendered.  It is not contested that Banque de Tahiti timely initiated the underlying proceedings in the circuit court.  The issue is whether the ten-year period under HRS § 657-5 was triggered, such that the Foreign Judgment is discharged under HRS § 657-5 and Banque de Tahiti is precluded from seeking to enforce it within the state.

Banque de Tahiti contends that the ten-year period has not yet begun because, under the UFMJRA which was adopted in Hawaiʻi in now-repealed HRS Chapter 658C, a Hawaiʻi court must first officially recognize the Foreign Judgment, especially given Kurth's challenge to the enforceability of the Foreign Judgment. Banque de Tahiti contends that without a Hawaiʻi judgment recognizing the enforceability of the Foreign Judgment, it lacked a right of action to execute within a reasonable time.  Put differently, Banque de Tahiti asserts that due to Kurth's attack on the enforceability of the Foreign Judgment, and the fact that the circuit court has not entered a judgment recognizing the Foreign Judgment, the ten-year clock under HRS § 657-5 has not yet started.

Kurth, in turn, responds that the circuit court did not

5

err because the ten-year period started when the Foreign Judgment was initially filed with the circuit court in Hawai'i (on September 19, 2003), regardless of Kurth's challenge to its enforceability. Kurth contends that the UFMJRA did not require an official declaration of recognition by the circuit court regarding the Foreign Judgment.

"A trial court's ruling on a motion to dismiss is reviewed *de novo*." Wong v. Cayetano, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006) (citation omitted). Moreover, resolving this appeal requires us to interpret relevant statutes.

> The interpretation of a statute is a question of law reviewable *de novo*. Capua v. Weyerhaeuser Co., 117 Hawai'i 439, 443, 184 P.3d 191, 196 (2008) (citing Flor v. Holguin, 94 Hawai'i 70, 76, 9 P.3d 382, 388 (2000)) (brackets, citations, and ellipses omitted). Statutory construction is guided by the following rules:
>
> > First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.
>
> Carlisle v. One (1) Boat, 119 Hawai'i 245, 256, 195 P.3d 1177, 1188 (2008) (quoting In re Contested Case Hearing on Water Use Permit Application, 116 Hawai'i 481, 489-90, 174 P.3d 320, 328-29 (2007)) (block quotation format altered).

Estate of Roxas v. Marcos, 121 Hawai'i 59, 66, 214 P.3d 598, 605 (2009) (quotation marks omitted).

HRS § 657-5 provides a ten-year window, subject to extension, in which a domestic judgment or decree is enforceable:

> **§657-5 Domestic judgments and decrees.** Unless an extension is granted, every judgment and decree of any court of the State <u>shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered</u>. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended. No extension of a judgment or decree shall be

> granted unless the extension is sought within ten years of the date the original judgment or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and the filing of a non-hearing motion or a hearing motion to extend the life of the judgment or decree.

(Emphasis added.) By its plain language, HRS § 657-5 is applicable only to judgments and decrees of a Hawai'i court. If a Hawai'i judgment is not satisfied within the ten year period, "HRS § 657-5 places the burden on the judgment creditor to seek judicial extension of the judgment prior to the expiration of the ten year statutory period; otherwise, the judgment is presumed to be 'paid and discharged' as a matter of law." Int'l Sav. & Loan Ass'n v. Wiig, 82 Hawai'i 197, 199, 921 P.2d 117, 119 (1996).

Hawaii's version of the UFMJRA (HRS Chapter 658C), which is applicable to this case but now repealed, covered recognition of money judgments from foreign governments. Thus, we must first consider whether HRS § 657-5 even applies to a foreign government judgment. HRS § 658C-4 provided that a foreign government judgment could be enforced in the same manner as a judgment of a sister-state. In this regard, HRS § 658C-4 stated:

> [§658C-4] Recognition and enforcement. (a) Except as provided in section 658C-5, a foreign judgment meeting the requirements of section 658C-3 shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money. A copy of any foreign judgment may be filed in the office of the clerk of an appropriate court of this State. The foreign judgment shall be enforceable in the same manner as the judgment of a sister-state that is entitled to full faith and credit.

(Emphasis added.) In turn, Chapter HRS 636C, appears to address judgments of a "sister-state," in that it deals with judgments of a court of the United States or courts entitled to full faith and credit in Hawai'i. See HRS § 636C-2 (2016). Under HRS § 636C-3 (2016), such "sister-state" judgments may be filed in an appropriate Hawai'i court and "[a] judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of

a court of this State . . . and may be enforced or satisfied in like manner." HRS § 636C-3. In sum, therefore, although HRS § 657-5 does not expressly apply to a foreign government judgment, it appears that via HRS § 658C-4 and HRS § 636C-3, the limitations to enforcing a judgment set out in HRS § 657-5 are applicable to foreign government judgments addressed under HRS Chapter 658C, such as the Foreign Judgment in this case.

Having concluded that HRS § 657-5 applies here, we must now determine if or when the ten-year window under HRS § 657-5 began to run. The Hawaiʻi Supreme Court has previously considered the issue of when the ten-year period begins in a different context. In Estate of Roxas, the supreme court considered the question of what constitutes the "original judgment" for purposes of when an extension may be filed under HRS § 657-5. 121 Hawaiʻi at 61, 214 P.3d at 600. The supreme court held that the "original judgment" for purposes of HRS § 657-5 is not necessarily the "first-in-time" judgment, but it is the judgment that creates the rights and responsibilities sought to be extended. Id. at 61, 71, 214 P.3d at 600, 610. "[T]he term 'judgment,' as used throughout HRS § 657-5, must refer to a _valid_ and _enforceable_ judgment." Id. at 67, 214 P.3d at 606 (emphasis added). "[T]he statute of limitations for extending a judgment begins to run at the creation of the judgment that creates the rights and responsibilities that the party is seeking to extend." Id. at 69, 214 P.3d at 608 (emphasis added).

While Estate of Roxas addressed a different question, the notion that there must be enforceable rights in order for the time period under HRS § 657-5 to start is relevant to this case. After all, HRS § 657-5 is a legislatively-created limit for the timely enforcement of rights created by judgments. Thus, the issue in this appeal is which action creates the enforceable right under the UFMJRA? Stated another way, when is the foreign judgment considered recognized and enforceable in Hawaiʻi: when the judgment creditor filed it with the clerk of the court, or after an official recognition by a court of this state?

8

This raises a question of statutory interpretation. We start with pertinent language of the UFMJRA as adopted in Hawai'i. HRS § 658C-4(a) provided, in pertinent part that: "Except as provided in section 658C-5, a foreign judgment meeting the requirements of section 658C-3 shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money." (Emphasis added.) In turn, § 658C-5 (Supp. 2008)(repealed 2009)[6] entitled "Grounds for non-recognition," provided in subsection (a) that a foreign judgment "shall not be conclusive" under several specified bases, and in subsection (b) provided that a foreign judgment "need not be recognized" under certain specified bases. Additionally, HRS § 658C-6 (Supp. 2008)(repealed 2009)[7] provided a list of instances where a

_____

[6] HRS § 658C-5 provides in relevant part:

    [§658C-5] **Grounds for non-recognition.** (a) A foreign judgment shall not be conclusive if:
      (1)   The judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
      (2)   The foreign court did not have personal jurisdiction over the defendant; or
      (3)   The foreign court did not have jurisdiction over the subject matter.
   (b)   A foreign judgment need not be recognized if:
      (1)   The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable the defendant to defend;
      (2)   The judgment was obtained by fraud;
      (3)   The cause of action on which the judgment is based is repugnant to the public policy of this State;
      (4)   The judgment conflicts with another final and conclusive judgment;
      (5)   The proceedings in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or
      (6)   In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.
   (Emphasis added.)

[7] HRS § 658C-6 provides in relevant part:

    [§658C-6] **Personal jurisdiction.** (a) The foreign judgment shall not be refused recognition for lack of personal
(continued...)

foreign judgment would not be denied recognition for lack of personal jurisdiction. Together, HRS §§ 658C-4, 658C-5, and 658C-6 indicate there should be an opportunity for the parties to argue the merits of recognizing a foreign judgment. However, Chapter 658C is unclear whether any formal hearing, opportunity to be heard, or official statement of recognition was required before a foreign judgment was recognized and enforceable.

The language of Chapter 658C is ambiguous and thus we look to extrinsic aids. Estate of Roxas, 121 Hawai'i at 68, 214 P.3d at 607. In 1962, the National Conference of Commissioners on Uniform State Laws (**Commissioners**) promulgated the UFMJRA, a uniform act, intended to codify rules on the recognition of money judgments rendered in a foreign court. UFMJRA, Prefatory Note (Nat'l Conference of Comm'rs on Unif. State Laws 1962). In 1996, Hawai'i adopted the UFMJRA. 1996 Haw. Sess. Laws Act 49 §§ 1-3 at 69-71. However, the UFMJRA as drafted by the Commissioners differs from the version adopted by Hawai'i in one key way. In

---

[7](...continued)
jurisdiction if:
(1) The defendant was served personally in the foreign state;
(2) The defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over the defendant;
(3) The defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;
(4) The defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate had its principal place of business, was incorporated, or had otherwise acquired corporate status, in the foreign state;
(5) The defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state; or
(6) The defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of that operation.
(b) The courts of this State may recognize other [bases] of jurisdiction.

the UFMJRA as drafted by the Commissioners, the section on "Recognition and Enforcement" stated:

> SECTION 3. [Recognition and Enforcement.] Except as provided in section 4, a foreign judgment meeting the requirements of section 2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money.  The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.

UFMJRA § 3.  Section 4, in turn, set out criteria where a foreign judgment was not conclusive or need not be recognized.  In Hawai'i, the section regarding "Recognition and Enforcement" was adopted in HRS § 658C-4(a), which provided in pertinent part:

> **[§658C-4] Recognition and enforcement.**  (a) Except as provided in section 658C-5, a foreign judgment meeting the requirements of section 658C-3 shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money.  <u>A copy of any foreign judgment may be filed in the office of the clerk of an appropriate court of this State</u>.  The foreign judgment shall be enforceable in the same manner as the judgment of a sister-state that is entitled to full faith and credit.

(Emphasis added.)  Therefore, Hawai'i added language that the judgment creditor could file the judgment with the clerk of the appropriate Hawai'i court.

The parties dispute the effect of this added language in Hawaii's statute that is different from the uniform law.  In our view, the effect of the added language to HRS § 658C-4 does not necessarily signal an intent to adopt a process different from the process intended by the Commissioners who drafted the UFMJRA.

In 1962, the Commissioners promulgated the UFMJRA and, in 2005, the Commissioners promulgated a revised version entitled the Uniform Foreign-Country Money Judgments Recognition Act (**UFCMJRA**).  In 2005, the Commissioners stated that the 2005 Act "continues the basic policies and approach of the 1962 Act." UFCMJRA Prefatory Note (Nat'l Conference of Comm'rs on Unif. State Laws 2005).  Given the similar intent behind the 1962 and 2005 Acts, and because the comments to the 1962 Act provide little guidance, we look to the comments and summary provided by

11

the Commissioners in 2005.

The comments to Sections 4 and 6 of the 2005 UFCMJRA indicate a <u>two-step process</u> which requires: <u>(1) recognition and then (2) enforcement</u>. The Commissioners summarized this process as follows:

> The first step towards enforcement is recognition of the foreign country judgment. The recognition occurs in a state court when an appropriate action is filed for the purpose. If the judgment meets the statutory standards, the state court will recognize it. It then may be enforced as if it is a judgment of another state of the United States. Enforcement may then proceed, which means the judgment creditor may proceed against the property of the judgment debtor to satisfy the judgment amount.
>
> First, it must be shown that the judgment is conclusive, final and enforceable in the country of origin. Certain money judgments are excluded, such as judgments on taxes, fines or criminal-like penalties and judgments relating to domestic relations. Domestic relations judgments are enforced under other statutes, already existing in every state. A foreign-country judgment must not be recognized if it comes from a court system that is not impartial or that dishonors due process, or there is no personal jurisdiction over the defendant or over the subject matter of the litigation. There are a number of grounds that may make a U.S. court deny recognition, i.e., the defendant did not receive notice of the proceeding or the claim is repugnant to American public policy. A final, conclusive judgment enforceable in the country of origin, if it is not excluded for one of the enumerated reasons, must be recognized and enforced. The 1962 Act and the 2005 Act generally operate the same.

Foreign-Country Money Judgments Recognition Act Summary (Nat'l Conference of Comm'rs on Unif. State Laws 2005).

The Commissioners further stated that:

> [r]ecognition of a judgment means that the forum court accepts the determination of legal rights and obligations made by the rendering court in the foreign country. *See e.g.* Restatement (Second) of Conflict of Laws, Ch. 5, Topic 3, Introductory Note (recognition of foreign judgment occurs to the extent the forum court gives the judgment "the same effect with respect to the parties, the subject matter of the action and the issues involved that it has in the state where it was rendered.") <u>Recognition of a foreign-country judgment must be distinguished from enforcement of that judgment</u>.

UFCMJRA § 4, cmt. 2 (Nat'l Conference of Comm'rs on Unif. State

Laws 2005)(emphasis added). Moreover, "[b]ecause the forum court cannot enforce the foreign-country judgment until it has determined that the judgment will be given effect, <u>recognition is a prerequisite to enforcement</u> of the foreign-country judgment." UFCMJRA § 4, cmt. 2 (Nat'l Conference of Comm'rs on Unif. State Laws 2005) (emphasis added). As such, "[t]he issue of whether a foreign-country judgment will be recognized is distinct from both the issue of whether the judgment will be enforced, and the issue of the extent to which it will be given preclusive effect." UFCMJRA § 4, cmt. 2 (Nat'l Conference of Comm'rs on Unif. State Laws 2005).

In adopting the UFMJRA in 1996, it appears that the Hawai'i Legislature intended a two-step process. When originally introduced in Senate Bill No. 2263, section 4 stated:

> **§-4 Recognition and enforcement.** Except as provided in section -5, a foreign judgment meeting the requirements of section -3 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.

S.B. 2263, 18th Leg., Reg. Sess. (1996). The Senate Committee on Judiciary commented that the bill "establishes a process for the <u>recognition and collection</u> of money judgments obtained outside of the United States, including safeguards to ensure that judgments obtained in foreign courts that do not meet the basic requirements of fairness and due process are <u>not recognized or enforced</u>." S. Stand. Comm. Rep. No. 2051, in 1996 Senate Journal, at 995 (emphasis added). Thus, it appears that the Legislature contemplated adoption of the UFMJRA as a way to establish a process for recognition while also ensuring that foreign judgments not comporting with fairness and due process are not recognized or enforced in Hawai'i. It follows that to recognize a foreign judgment, the process involves a determination of whether it comports with, *inter alia*, fairness and due process.

The bill adopting the UFMJRA was amended in the House to add the following sentence: "A copy of any foreign judgment may be filed in the office of the clerk of an appropriate court of this State." S.B. 2263, S.D. 1, H.D. 1, 18th Leg., Reg. Sess. (1996). In explaining the amendment, the House Committee on Judiciary commented that it "amended the bill by: (1) [c]larifying that a copy of the foreign judgment may be filed with the clerk of an appropriate court of this State[.]" H. Stand. Comm. Rep. No. 1553-96, in 1996 House Journal, at 1649. In discussion of the bill on the floor, one senator noted that the amendments

> permit the filing of a copy of any foreign judgment in the office of the clerk in the appropriate court in the state, and provides the mechanism for the filing and notice requirements. I believe these amendments make it easier for persons dealing in international commerce to track foreign judgments.

1996 Senate Journal, at 472 (statement of Sen. Graulty). It thus appears that the Legislature amended the bill to simply enable filing of the foreign judgment, making it easier for parties dealing with foreign judgments. There is no indication the amendment was intended to allow the filing with the court clerk to be a substitute to a judicial determination of recognition. In short, the mere act of filing a foreign judgment with the clerk of the court was not intended to convert the foreign judgment into an enforceable judgment in Hawai'i.

As a practical matter, recognition by the court seems necessary to give the debtor an opportunity to raise the grounds for non-recognition of the foreign judgment, as was provided under HRS § 658C-5. Recognition prior to enforcement is also sensible because it may be unclear how a foreign judgment would be recognized and interpreted as it relates to converting the monetary amount to U.S. currency. See 9 Am. Jur. Proof of Facts 3d § 5 (1990).

In sum, the Commissioners noted that the 1962 UFMJRA and the 2005 UFCMJRA have the same basic approach, and the comments and summary to the 2005 UFCMJRA indicate a two-step

process of recognition and then enforcement. In adopting the UFMJRA, in HRS Chapter 658C, the Hawai'i Legislature did not intend to make substantive amendments to the uniform law changing the two-step process. Rather, HRS 658C-4 permitted a debtor to raise grounds for non-recognition of the foreign judgment. Under this provision, a court is allowed to recognize the foreign judgment or deny recognition. Following recognition, the creditor may seek enforcement of the foreign judgment. Merely filing the foreign judgment with the clerk of the appropriate court did not convert the judgment into an enforceable judgment in Hawai'i.

In this case, Banque de Tahiti was required to seek and obtain a judicial determination recognizing the Foreign Judgment before it was enforceable. Without recognition of the Foreign Judgment by the court, the second step of enforcement could not begin. In other words, under Estate of Roxas, there was no "valid and enforceable judgment" to start the ten-year period under HRS § 657-5. Banque de Tahiti filed the Foreign Judgment in the circuit court and sought and obtained an order of examination. Although Banque de Tahiti attempted to enforce the Foreign Judgment, Kurth asserted that the Foreign Judgment was unenforceable under the UFMJRA, and raised grounds for non-recognition under HRS § 658C-5. The circuit court has not yet recognized the Foreign Judgment.

Therefore, for the reasons discussed above, the ten year period in HRS § 657-5 has not started to run, because the circuit court has not recognized the enforceability of the Foreign Judgment. The circuit court thus erred in granting Kurth's motion to dismiss pursuant to HRS § 657-5.

B.    Renewed Motion for Reconsideration

Banque de Tahiti contends that the circuit court erred by granting Kurth's renewed motion for reconsideration of the order granting summary judgment for Banque de Tahiti. The circuit court granted leave for Kurth to file the renewed motion for reconsideration as a result of Banque de Tahiti's late

15

production of certain documents.  Banque de Tahiti does not assign any error to the circuit court's invitation to Kurth to file a renewed motion for reconsideration.

"The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard."  Cho v. State, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007)(quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002)).

Banque de Tahiti contends that the circuit court abused its discretion because Kurth's "newly discovered evidence" was inapposite in that it actually demonstrated the judgment was a money judgment; the burden to prove any of the grounds for non-recognition of the Foreign Judgment was on Kurth, and he failed to sustain it; and none of the "newly discovered evidence" could not have been discovered through due diligence.  However, the circuit court granted Kurth's renewed motion based on "newly produced evidence" and the existence of genuine issues of material fact regarding service of the Foreign Judgment on Kurth and whether Kurth or an attorney representing Kurth were present at the underlying proceeding in Tahiti.  Of Banque de Tahiti's arguments, the only one that tangentially addresses this conclusion is the assertion that the "newly discovered evidence" could have been discovered through due diligence.

Banque de Tahiti contends that neither Veniere's deposition nor the newly produced documents should have been relied upon by the circuit court because Kurth could have discovered them through due diligence.  However, on September 12, 2005, the circuit court granted Kurth's motion to compel responses to his request for production of documents, which included a request for all documents related to any proceedings in the underlying French Polynesian action.  In September 2007, over two years later, Banque de Tahiti produced some of the pleadings in the underlying French Polynesian case; asserted that Veniere was not aware that he was supposed to produce copies of the pleadings that were available to both parties; it was only in

16

preparing his declaration for Banque de Tahiti's motion for summary judgment on Kurth's counterclaims that Veniere realized the oversight; and Banque de Tahiti was now producing the pleadings related to the case. In response to this late disclosure, it is understandable that the circuit court would grant Kurth permission to depose Veniere regarding his review of the French Polynesian records.

Banque de Tahiti further contends that the "newly produced documents" could have been obtained by Kurth at an earlier date as they were part of the record of the French Polynesian court, which Kurth had access to as a party to the underlying French Polynesian action, thus the court should not consider the documents "newly discovered." However, in submitting the documents, Banque de Tahiti admitted that the documents should have been produced earlier in response to Kurth's request, regardless of Kurth's purported access to them. Under these circumstances, we cannot say the circuit court abused its discretion.

Banque de Tahiti filed the Foreign Judgment pursuant to HRS Chapter 658C, which applied to "foreign judgment[s] that [are] final, conclusive, and enforceable where rendered." HRS § 658C-3. The parties apparently agree that, under French Polynesian law, the Foreign Judgment needed to be perfected through notice and service for it to be enforceable in French Polynesia. Thus, whether proper service occurred was a material fact. Banque de Tahiti asserted that the Foreign Judgment was enforceable in French Polynesia because the requirements of Article 400 of the Code of Civil Procedure of French Polynesia were met. The circuit court appears to have based its initial decision, that there was compliance with Article 400, on the declaration of Veniere. In that declaration, Veniere declared that the procedures followed to serve Kurth with the Foreign Judgment satisfied the service requirements of Article 400, and it was not required that Kurth be personally served. However, in his deposition, Veniere stated that the "Record of Service"

17

probably indicated that the judgment was not served on Kurth, and that Veniere was not aware if efforts were made through the Tahiti court pursuant to Article 400 to excuse the lack of service. Therefore, it appears that a genuine issue of material fact existed as to whether the law of French Polynesia was complied with such that the Foreign Judgment was enforceable where rendered. The circuit court did not err in granting the renewed motion for reconsideration.

**III. Conclusion**

For the foregoing reasons, the Judgment entered on March 24, 2014, in the Circuit Court of the Third Circuit, is vacated to the extent that Banque de Tahiti's claims under the Foreign Judgment were dismissed pursuant to HRS § 657-5.

We affirm the circuit court's grant of Kurth's renewed motion for reconsideration, which rescinded the prior grant of summary judgment in favor of Banque de Tahiti.

This case is remanded to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, July 31, 2017.

On the briefs:

Randall Y. Kunn Char,
for Judgment Creditor-Appellant.

Sidney K. Ayabe,
Steven L. Goto,
(Ayabe, Chong, Nishimoto, Sia
& Nakamura, LLLP)
for Judgment Debtor-Appellee.

Presiding Judge

Associate Judge

Associate Judge

18